```
                    UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF TEXAS
                          DALLAS DIVISION

KRISTINA WHITAKER                §
                                 §
V.                               §
                                 §   CIVIL ACTION NO. 3:14-cv-3571-D
UNION SECURITY INSURANCE         §
COMPANY and                      §
DISABILITY REINSURANCE           §
MANAGEMENT SERVICES, INC.        §
```

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW Kristina Whitaker [hereinafter "Whitaker"], Plaintiff herein, and would respectfully show the Court the following:

**DEFENDANTS**

1. Defendant Union Security Insurance Company [hereinafter "USIC"] is a foreign company licensed to do business in Texas, and was served with citation by serving its attorney for service, Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701-3218. USIC was formerly named Fortis Benefits Insurance Company.

2. Defendant Disability Reinsurance Management Services, Inc. [hereinafter "DRMS"] is a foreign company licensed to do business in Texas, and was served with citation by serving its attorney for service, Commissioner of Insurance, 333 Guadalupe Street, Austin, Texas 78701-3938.

3. USIC and DRMS removed this action from the 192nd District Court of Dallas County, Texas, and are now subject to this Court's jurisdiction.

## SUMMARY OF CLAIMS

4. Whitaker is permanently disabled due to a cerebrovascular accident, which resulted from a spontaneous dissection of a carotid artery. Such disability is covered under a long-term disability (LTD) insurance policy issued to Whitaker's employer by Fortis Benefits Insurance Company (now named USIC). The policy provides benefits until Social Security normal retirement age for disability due to a bodily injury that is a direct result of an "accident."

5. DRMS, acting on behalf of USIC, paid monthly LTD benefits to Whitaker for five years under the USIC policy, but terminated the payment of all benefits thereafter. According to DRMS, Whitaker's disability was due to a non-accidental cause.

6. The denial of benefits directly contravenes Texas law, under which "accident" means an injury that could not reasonably be anticipated by the insured. Whitaker could not have anticipated that she would suffer a spontaneous dissection of a carotid artery at her young age of 36 years. DRMS and USIC failed to pay the claim when liability was reasonably clear.

7. DRMS and USIC have withheld Whitaker's monthly benefits of $1,460.93 from March 29, 2014. Whitaker's eligibility to receive such benefits extends to her Social Security normal retirement age in October 2039. The denial, therefore, deprives Whitaker of a total of over $447,044 in LTD benefits.

## FACTS

8. At the age of only 36 years, Whitaker suffered an acute dissection of the left internal carotid artery, as determined by

MRI on March 28, 2009. The dissection was spontaneous. Indeed, Richard Levy, M.D., the consultant retained by DRMS, also described the occurrence as a spontaneous dissection.

    9. Whitaker had a clean medical history prior to March 28, 2009. An MRI on March 28, 2009 demonstrated no atherosclerotic narrowing or irregularity within the great vessel origins in her head and neck. Her only prior hospitalization was for a C-section in 2007.

    10. The dissection of Whitaker's left internal carotid artery thereafter resulted in the complete occlusion of the left internal carotid artery, and the occlusion of left middle cerebral artery, and the occlusion of all branches thereof, resulting in a very large cerebrovascular accident.

    11. Whitaker's medical records document the extent of the cellular damage, including cortical necrosis and encephalomalacia, involved in the cerebrovascular accident. Whitaker's cerebrovascular accident thus included damage or loss to the physical structure or tissue or cells of her body. These injuries left Whitaker with expressive aphasia and right hemiplegia.

    12. Whitaker's cerebrovascular accident was the direct result of the spontaneous dissection of her left internal carotid artery. From Whitaker's standpoint, in light of her prior medical history, Whitaker could not reasonably anticipate that she would suffer from the spontaneous dissection of a left internal carotid artery.

    13. Whitaker's cerebrovascular accident was not related to any condition or disorder other than the spontaneous dissection of

her left internal carotid artery. Whitaker's cerebrovascular accident was not related to her pregnancy, which concluded with a C-section in 2007, or to the C-section itself.

14. Whitaker thus suffered a disability due to her cerebrovascular accident. Whitaker's cerebrovascular accident left her with deficits that Whitaker's treating physicians, as well as DRMS and Dr. Levy, all agree left her permanently and totally disabled.

15. DRMS, as "claims administrator" for USIC, terminated Whitaker's LTD benefits after five years, effective March 28, 2014. The position taken by DRMS in a denial letter dated May 12, 2014 is that Whitaker suffered a "spontaneous dissection provoked by a non accidental [sic] cause."

16. DRMS noted in the denial letter that the USIC policy provided two maximum benefit periods: (1) Social Security normal retirement age for disability due to "Injury," and (2) 60 months for disability due to a "Sickness."  The question posed by DRMS to Dr. Levy in a referral form dated April 23, 2014 was "whether or not we can say her dissected artery could have been due to her fall/accident."  In neither the referral form nor the denial letter did DRMS provide a definition of "accident."

17. The USIC policy defines "Injury" to mean "a bodily injury that is the direct result of an accident and not related to any other cause."  The policy does not define "accident."

18. There is no dispute that Whitaker's cerebrovascular accident was a "bodily injury."  Under Texas law, as discussed

PLAINTIFF'S SECOND AMENDED COMPLAINT - Page 4
complaint.2d.amended.wpd

below, the cellular damage to Whitaker's brain, including cortical necrosis and encephalomalacia, constitutes "bodily injury."

19. The central question is whether a "spontaneous" dissection of Whitaker's carotid artery was an "accident."  As discussed below, Texas law unquestionably interprets "accident" as including such a spontaneous and unexpected occurrence.

20. Pursuant to section 541.156(a) and 541.157 of the Texas Insurance Code, Whitaker provided written notice and demand for payment to DRMS and USIC by letter dated July 8, 2014.  USIC and DRMS responded by letter dated August 22, 2014, declining to make any effort to resolve this dispute.  Instead, the letter alleged that "DRMS found that Whitaker's disability was the result of a medical condition as that term is defined by the applicable policy."  The USIC policy, however, does not define the term "medical condition."  Moreover, the term "medical condition" does not appear in the policy's definition of "Injury."

21. In this lawsuit, USIC and DRMS are taking the position that Whitaker's disability "resulted from a 'Sickness' rather than an 'Injury' as those terms are defined by the Policy." (<u>See</u> Answer of Defendants to Plaintiff's First Amended Complaint [ECF Doc. 10] at ¶4.)  They allege in discovery that "Sickness" is defined in the policy to mean "illness, disease or pregnancy," and that "Whitaker suffered a stroke, which is a type of cerebrovascular disease."

22. Although atherosclerosis can cause cerebrovascular accidents, the MRI on March 28, 2009 clearly excluded that possibility in this instance. Moreover, Whitaker's cerebrovascular

accident was clearly a direct result of the spontaneous dissection of her left internal carotid artery, and was not a direct result of any illness or disease, or of her pregnancy two years earlier.

23. In this lawsuit, USIC and DRMS are taking the position that, even if Whitaker suffered a bodily injury that was the direct result of an accident, it was not an "Injury" under the policy "because Whitaker's impairment is 'related to another cause,' i.e. the stroke." So, if Whitaker's disability resulted from a stroke, it was also "related to" the stroke as "another cause." But a stroke cannot be both a cause and "another" cause.

24. In this lawsuit, USIC and DRMS are taking the positions that, within the definition of "Injury" in the policy, "bodily injury" means "harm or hurt inflicted on the body by an external force, and "accident" means that there must be "harm or hurt inflicted on the body by an external force." The policy, however, does not include "external force" within the definition of "Injury."

25. All conditions precedent were performed or have occurred.

## GOVERNING LEGAL PRINCIPLES

A. **Liability for Breach of Contract, for "Bad Faith" Denial of Benefits, and for Deceptive Trade Practices.**

26. Whitaker's claim is governed by Texas law. Insurers are subject to Texas law for breach of contract, for breach of the common-law duty of good faith and fair dealing (often called a "bad faith" denial), as well as for breach of the statutory equivalent of such duty under section 541.060(a)(2) of the Texas Insurance Code. Such statutory violation is also actionable under section

17.50(a)(4) of the Texas Deceptive Trade Practices Act ("DTPA").

27.   "Person" is defined in section 541.002(2) of the Texas Insurance Code to also impose liability on entities other than insurers.  It includes other entities "engaged in the business of insurance, including an agent, broker [or] adjuster."  Liability can accordingly be imposed on a "claims administrator."

28.   Texas law imposes liability upon an insurer under common law for what is known as a "bad faith" cause of action.  Liability arises from the denial of a claim without a reasonable basis.  That aspect of the common law claim has been codified into section 541.060(a)(2)(A) of the Texas Insurance Code, but has been expanded to impose liability on entities beyond the insurer.  Liability is imposed on those entities that fail to pay a claim "with respect to which the insurer's liability has become reasonably clear."

29.   An insurer or other entity cannot insulate itself from "bad faith" liability by merely engaging an expert.  The Texas Supreme Court observed that "we have never held that the mere fact that an insurer relies upon an expert's report to deny a claim automatically forecloses bad faith recovery as a matter of law," with "bad faith" occurring "if the insurer denies a claim with no reasonable basis."  State Farm Lloyds v. Nicolau, 951 S.W.2d 444, 448 (Tex. 1997).

> Instead, we have repeatedly acknowledged that an insurer's reliance upon an expert's report, standing alone, will not necessarily shield the carrier if there is evidence that the report was not objectively prepared or the insurer's reliance on the report was unreasonable.

Id.

B.   **Interpretation of "Bodily Injury" Under Texas Law**.

30.   Under Texas law, "bodily injury" includes "injury to the physical structure of the body."  <u>Trinity Universal Ins. Co. v. Cowan</u>, 945 S.W.2d 819, 823 (Tex. 1997).  Bodily injury includes "tissue damage."  <u>Guaranty Nat'l Ins. Co. v. Azrock Indus. Inc.</u>, 211 F.3d 239, 243 (5th Cir. 2000).  Bodily injury includes "injury to human cells."  <u>Samsung Elecs Am. Inc. v. Federal Ins. Co.</u>, 202 S.W.3d 372 (Tex. App. -- Dallas 2006), <u>aff'd</u>, 268 S.W.3d 506 (2008).  Bodily injury includes "biological injury."  <u>Zurich Am. Ins. Co. v. Nokia, Inc.</u>, 268 S.W.2d 487 (Tex. 2008).

C.   **Interpretation of "Accident" Under Texas Law**.

31.   Nearly 40 years ago, the Texas Supreme Court established the law governing the question of how "accidental" or "accident" in an insurance policy should be interpreted.

> We therefore hold that injuries are "accidental" and within the coverage of an insurance policy . . . if, from the standpoint of the insured, the injuries are not the natural and probable consequence of the action or occurrence which produced the injury; or in other words, **if the injury could not reasonably be anticipated by the insured**, or would not ordinarily follow from the action or occurrence which caused the injury.

<u>Republic Nat'l Life Ins. Co. v. Heyward</u>, 536 S.W.2d 549, 557 (Tex. 1976)(emphasis added); <u>see also</u> <u>Mid-Century Ins. Co. v. Lindsey</u>, 997 S.W.2d 153, 155 (Tex. 1999)(applying same interpretation to "accident").

32. Justice Byron White, after retiring from the United States Supreme Court, examined a policy defining "injury" as "bodily injury caused by an accident" in <u>Todd v. AIG Life Ins. Co.</u>, 47 F.3d 1448, 1452 (5th Cir. 1995).  Justice White applied an

interpretation under the federal ERISA framework that was consistent with the interpretation in Heyward, which he discussed. See Todd, 47 F.3d at 1455-56. Significantly, Justice White concluded his analysis with the observation that "insurance companies have ample ways to avoid judgments like this one." Id. at 1457. In other words, insurers can simply draft their policies to unambiguously define "accident."

33. USIC was involved in litigation on that issue when it was named Fortis Benefits Insurance Company. In Keller v. Fortis Benefits Ins. Co., 131 Fed. Appx. 874 (3d Cir 2005), the policy offered accidental death, not LTD benefits, but the key issue was whether the incident was an "accident" or the result of a "physical disease." The term "physical disease" was not defined in the policy. Id. at 876. The incident was a grand mal seizure experienced by a person with no prior history of seizures. Fortis denied the claim on the basis that he had experienced a head injury some years before, which created a "risk for developing a seizure disorder." Id. at 875. The trial court determined: "This was an unusual, sudden and unexpected event." Id. "The mere potentiality for a seizure sometime in the future is not a disease." Id. The appellate court agreed. Id.

E.   **Interpretation of Policies Under Texas Law to Not Add Terms.**

34.   Under Texas law, as USIC knows from the time when it was named Fortis Benefits Insurance Company, a court should not "insert non-existent language" into contracts. Fortis Benefits v. Cantu, 243 S.W.3d 642, 649 n.41 (Tex. 2007). A court should not "remake

[a] contract by reading additional provisions into it." <u>Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London</u>, 327 S.W.3d 118, 126 (Tex. 2010).  As emphasized by the Texas Supreme Court: "Most importantly, we must give the policy's words their plain meaning, without inserting additional provisions into the contract."  <u>National Union Fire Ins. Co. v. Crocker</u>, 246 S.W.3d 603, 606 (Tex. 2008).

35.  The foregoing Texas law is not a recent development. "Courts cannot read into a contract that which is not there." <u>Southwest E&T Suppliers, Inc. v. American Enka Corp.</u>, 463 F.2d 1165, 1166 (5th Cir. 1972)(applying Texas law).

F.   <u>Defendants' Monitoring of Texas Law</u>.

36.  Although Texas law applies to USIC and DRMS whether they have knowledge of it or not, USIC has outsourced to DRMS the job of drafting policy forms and overseeing any amendments, and DRMS has admitted in discovery that it "monitors developments in state laws touching on policies it administers in its compliance, legal, and claims areas."  Indeed, DRMS personnel from all three areas "reviewed certain legal materials, including, but not limited to case law, regulations, department of insurance bulletins and materials" in order to prepare summaries of Texas law for internal use.

### FATAL FLAWS IN THE DENIAL OF WHITAKER'S BENEFITS

37.  This case presents the straightforward question of whether Whitaker, at age 36, could not reasonably anticipate the spontaneous dissection of her carotid artery.  <u>See</u> <u>Heyward</u>, 536

PLAINTIFF'S SECOND AMENDED COMPLAINT - Page 10
complaint.2d.amended.wpd

S.W.2d at 557; <u>Lindsey</u>, 997 S.W.2d at 155. This case also presents an obvious answer to that question: Of course she could not reasonably anticipate a "spontaneous" dissection. By the definition in Webster's New Explorer Medical Dictionary, for example, "spontaneous" means "developing without apparent external influence." From Whitaker's perspective, the spontaneous dissection just happened; she had no warning. She could not possibly have anticipated that she would suffer a spontaneous dissection of a carotid artery at her young age.

38. Whitaker's cerebrovascular accident included damage or loss to the physical structure or tissue or cells of her body, and thus constituted a "bodily injury." Her cerebrovascular accident was the direct result of the spontaneous dissection of her left internal carotid artery, and was not related to any condition or disorder other than the acute dissection of her left internal carotid artery. In particular, her cerebrovascular accident was not related to her pregnancy, or to her C-section two years earlier. Whitaker's cerebrovascular accident accordingly constituted an "Injury" under the policy.

39. Whitaker suffered total disability due to her cerebrovascular accident, including expressive aphasia and right hemiplegia. Her disability is permanant.

40. LTD benefits are payable, therefore, until Whitaker's Social Security normal retirement age. The termination of those benefits after only five years was a breach of contract, for which USIC is liable.

PLAINTIFF'S SECOND AMENDED COMPLAINT - Page 11
complaint.2d.amended.wpd

41. Whitaker's claim is not defeated by the arguments of USIC and DRMS that Whitaker's cerebrovascular accident was a "disease." The medical records clearly show that Whitaker suffered a spontaneous dissection of her left internal carotid artery. Even the consultant retained by DRMS, Dr. Levy, agreed with that assessment. "This was an unusual, sudden and unexpected event." See Keller, 131 Fed. Appx. at 875. "The mere potentiality for a [stroke] sometime in the future is not a disease." See id.

42. Whitaker's claim is not defeated by the arguments of USIC and DRMS that "bodily injury" and "accident" include a requirement for "external force," because the Court cannot add those terms to the policy. See Fortis Benefits, 243 S.W.3d at 649 n.41; Gilbert Tex. Constr., 327 S.W.3d at 126; National Union, 246 S.W.3d at 606; Southwest, 463 F.2d at 1166.

43. USIC's liability under the policy does not end the inquiry. The interpretation of "accident" under Texas law has been a known quantity for almost 40 years. According to the Texas Department of Insurance, USIC has been licensed in Texas for that entire time, and DRMS has been licensed as a third-party administrator in Texas for over 15 years. Yet USIC and DRMS failed to even address the question of what "accident" means under Texas law. Instead, they tried to unload the question onto a consultant, Dr. Levy. But the interpretation of "accident" is not a medical question. The reliance on the opinions of Dr. Levy was "merely pretextual" and "unreasonable," so cannot serve as insulation from liability for denying the claim. See Nicolau, 951 S.W.2d at 448.

44.  According to the Texas Department of Insurance, USIC was penalized for unfair claim practices and other violations in Colorado in 1994, Missouri in 1995, Connecticut in 1996, Oregon and South Dakota in 2000, Minnesota in 2001, and in Arizona in 2013.  USIC has failed to learn from that history.

45.  If USIC is unhappy with paying benefits under the policy as written, it has "ample ways" to avoid doing so in other cases.  See Todd, 47 F.3d at 1457.  In other words, if USIC wants to avoid paying disability benefits beyond five years for a spontaneous dissection of a carotid artery that another insured may suffer, it could simply draft future policies to unambiguously so state.  It could even add the terms "external force" to the definition of "Injury" in future policies.  But it cannot avoid paying disability benefits to Whitaker under the policy as drafted.

## LIABILITY AND DAMAGES

46.  DRMS and USIC wrongfully denied Whitaker's claim for benefits.  In denying such benefits, USIC breached the subject insurance contract.  USIC is liable under the contract for the monthly benefits of $1,460.93 that have been withheld from March 29, 2014 through Whitaker's Social Security normal retirement age in October 2039.  The denial of benefits through October 2039 will have deprived Whitaker of a total of over $447,044 in LTD benefits.  Moreover, USIC's liability under the policy is accompanied by liability for 18% interest under section 542.060 of the Texas Insurance Code for failure to promptly pay the contractual amounts.

47.  DRMS and USIC knowingly denied Whitaker's claim without

reasonable basis.  USIC is accordingly liable under common law for actual damages for the "bad faith" denial of benefits.  DRMS and USIC are also liable under section 541.060(a)(2)(A) of the Texas Insurance Code, and under section 17.50(a)(4) of the DTPA.

WHEREFORE, PREMISES CONSIDERED, Whitaker prays that she recover from USIC and DRMS her actual damages, treble damages for their knowing statutory violations, punitive damages, attorney's fees and expenses, prejudgment and postjudgment interest at the maximum legal rates, and all costs of court, and recover from USIC an additional 18% interest on the policy benefits, and for such other and further relief to which she may be justly entitled.

Respectfully submitted,

/s/ James L. Johnson
James L. Johnson
Texas Bar No. 10742020

THE JOHNSON LAW FIRM
6500 Greenville Avenue
Suite 345
Dallas, Texas  75206
Telephone:    214/363-1629
Telecopier:   214/363-9173
Email: jamesljohnson@covad.net

ATTORNEY FOR PLAINTIFF
KRISTINA WHITAKER

CERTIFICATE OF SERVICE

I hereby certify that on May 4, 2015, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to all of Defendants' attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

/s/ James L. Johnson
James L. Johnson